CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

MAY 14 2008

JOHN F. CORCORAN, CLERK
BY: /s/ J. Bragt
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JEAN BURWELL, for A.J.<br>        Plaintiff,<br><br>v.<br><br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br>        Defendant. | Civil Action No. 7:07cv00300<br><br><br><br>By: Hon. Michael F. Urbanski<br>     United States Magistrate Judge |

## MEMORANDUM OPINION

Plaintiff Jean Burwell ("Burwell"), the grandmother of the minor child, A.J., brought this action pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g), for a review of the final decision of the Commissioner of Social Security denying the claim for child's supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on cross motions for summary judgment.

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, a reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). If such substantial evidence exists, the final decision of the

Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

## I.

Burwell claims disability for her grandchild, A.J., due to behavioral issues stemming from family conflict and substance abuse issues. Burwell disputes the administrative law judge's ("ALJ") finding that A.J.'s depression and behavioral issues neither met nor functionally equaled a listed impairment. Burwell argues that the ALJ should have accorded more significant weight to the opinion of A.J.'s treating psychiatrist, Dr. Richard Claytor, who opined that Listing 112.11 was met.[1] In the alternative, Burwell argues that A.J.'s impairments functionally equal the listings because she has marked limitations in domain (iii) (Interacting and relating well with others) and domain (vi) (General health and physical well-being). 20 C.F.R. § 416.926(b)(1).

Although Dr. Claytor opined that A.J. met Listing 112.11, neither her treatment nor school records supports this conclusion. The ALJ's decision to discount Dr. Claytor's disability opinion is supported not only by Dr. Claytor's own treatment notes, but by the assessments of other examining and reviewing psychologists and medical doctors. Further, because A.J. does not have a marked limitation in more than one domain of functioning, her impairments do not functionally equal the listings. While Burwell argues that A.J. has a marked limitation in domain (vi), there is no evidence to support any physical problem required to satisfy this domain. As a result, substantial evidence supports the ALJ's conclusion that the requirements of the Listing of Impairments were neither met not functionally equaled in this case. As a result, defendant's motion for summary judgment must be granted and this appeal dismissed.

---

[1] Listing 112.11 concerns Attention Deficit Hyperactivity Disorder: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.

2

## II.

A child under the age of eighteen is considered to be "disabled" for purposes of eligibility for a child's SSI if she has a medically determinable physical or mental impairment which results in marked and severe functional limitation, and which has lasted or can be expected to last for a continuous period of at least twelve (12) months, or results in death. 42 U.S.C. § 1382c(a)(3)(C)(I). In determining whether a child is eligible for child's SSI on the basis of disability, a three-step sequential evaluation process is followed. 20 C.F.R. § 416.924.

First, it must be determined whether the child is engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If not, it must then be determined whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c). If the child suffers from a severe impairment or combination of impairments, it must then be determined whether the child's impairment meets, medically equals, or functionally equals an impairment listed in the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 416.924(d).

Functional equivalence is defined as an impairment of listing-level severity; for example, it must result in "marked" limitations in two domains of functioning, or result in an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). There are six domains of functioning assessed in determining functional equivalence: (I) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) ability to care for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

The ALJ found that A.J. has not engaged in substantial gainful activity and that her adjustment, attention deficit hyperactive, post traumatic stress and depressive disorders caused her more than minimal limitations on her functioning, resulting in a severe impairment.

3

Administrative Record (hereinafter "R") at 15. However, in a detailed analysis of A.J.'s condition, the ALJ found that her impairments did not meet or medically equal a listed impairment. (R. 15-20) The ALJ next considered if A.J.'s impairments were functionally equivalent to a listing, considering the six domains of functioning. Based on the record, the ALJ found that while A.J. had limitations in her ability to interact and relate to others, her limitations were not marked. (R. 21) Nor were there any marked limitations in any other domain. (R. 20-21) As such, the ALJ concluded that A.J.'s impairments were not functionally equivalent to a listing.

### III.

Burwell first argues that the ALJ erred in not fully crediting Dr. Claytor's opinion that she met Listing 112.11. Absent persuasive contradictory evidence, the "treating physician rule" generally "requires that the fact-finder give greater deference to the expert judgment of a physician who has observed the patient's medical condition over a prolonged period of time." Elliott v. Sara Lee Corp., 190 F.3d 601, 607 (4th Cir. 1999). However, a treating physician's opinion may be assigned little or no weight if it is conclusory and/or is not supported by objective testing or the record as a whole. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

A.J.'s medical history consists largely of visits to her counselor, Sharon M. Brammer, M.A., her psychiatrist, Dr. Richard L. Claytor, of Family Preservation Services, Inc., and her pediatrician, Dr. David Dixon of Physicians to Children, Inc.

A.J. was first seen by counselor Brammer in November, 2003, when she was seven years old. The counseling intake note describes A.J.'s behavior problems as concerning very low self-esteem, nervousness, anxiety, frustration, irritability and hyperactivity. (R. 211) It was noted

4

that as a small child she was a witness to severe domestic violence episodes and problems of substance abuse involving her mother. Counseling sessions continued with counselor Brammer on at least a monthly basis through February, 2005.[2]

A.J. was seen for an Initial Psychiatric Assessment by Dr. Claytor on May 26, 2004 who noted the same complaints and issues with the mother as Brammer and prescribed a medication for ADHD (attention deficit hyperactive disorder). The record contains barely legible notes from A.J.'s visits with Dr. Claytor roughly eight weeks apart over the next two years. The note from July 12, 2004 indicates that A.J. finished second grade successfully and was promoted to the third grade. (R. 272) After a change of medications, A.J. showed improvement at school, but some concerns were raised regarding decreased appetite. (R. 269-71) By January, 2005, Dr. Claytor's notes indicate that A.J. was doing well at school with no teachers or staff calling to report inattention. The notes reflect academic success and a small amount of weight gain. (R. 268) In early 2005, the family discontinued A.J.'s medications and her academics began to decline. Medications were reintroduced in late spring 2005, to which A.J. "responded nicely." (R. 265) According to the June 2005 note, A.J.'s sleep, appetite and grades had improved. (R. 265) The August 2005 report indicated that "reportedly she continues to do quite well. . . . Sleep and appetite ok." (R. 264) The October 2005 note reports "relatively stable and status quo." (R. 263) In February 2006, A.J. was reported to be fairly stable and doing reasonably well academically. (R. 262) Although her grandmother raised concerns with the medications and

---

[2]Counselor Brammer was asked to complete a Child Mental Status Form by Disability Determination Services, which she returned on June 12, 2006. Brammer indicated that A.J. had a history of anxiety, low self esteem, hyperactivity and temper tantrums, but could not provide an assessment of her current mental status as she had not seen A.J. since February 22, 2005, more than a year earlier. (R. 278-81)

5

A.J.'s appetite, Dr. Claytor noted that A.J. had gained two pounds since her last visit. (R. 262) The May 2006 report was consistent. (R. 261) The last note from Dr. Claytor, dated September 7, 2006, echoed A.J.'s stable condition, and reported that "[s]he had a fun and uneventful summer and finished up her fourth grade year successfully. She has been back in school for two days now and so far is doing well. Her appetite is fairly good, and she has gained 1-1/4 pounds since our last appointment. Her behavior continues to be somewhat problematic at times, but is slowly improving." (R. 294)

Despite the progress and stability reflected in these medical notes, Dr. Claytor responded to an inquiry from counsel three weeks later, on September 25, 2006, that A.J. met Listing 112.11, which he indicated was supported by evidence of hyperactivity (restless, fidgeting, out of her seat, tapping foot in class, moving desk), impulsivity (blurting out, talking in class) distractibility (not listening, not following directions). (R. 296) Dr. Claytor also noted that she had marked deficits in all five areas of development or functioning – cognitive/communicative, motor, social, personal, and concentration, persistence or pace. (R. 297).[3]

The ALJ concluded, and review of the record bears out, that Dr. Claytor's September, 2006 assessment is inconsistent with his own medical records of his treatment of A.J. (R. 20) This assessment is also inconsistent with other medical records and A.J.'s school records. There is nothing in the records of A.J.'s visits to her pediatrician that supports the marked deficits in all areas of development or functioning noted by Dr. Claytor. There is, for example, nothing in Dr. Dixon's notes that even remotely suggests a marked limitation in motor

---

[3] This assessment contrasts with Dr. Claytor's July, 2006 response to the Child Mental Status Form requested by Disability Determination Services, where his only response was "See Notes." (R. 290-93)

6

development or functioning as found by Dr. Claytor. Instead, Dr. Dixon's records are noteworthy because they are so unremarkable. (R. 230-60)

Dr. Claytor's September, 2006 assessment also conflicts with the assessment of Dr. Luckett, a clinical psychologist who performed a consultative mental status evaluation of A.J. on March 29, 2006. (R. 215-21) While A.J. scored in the severe depression range on the Childrens Depression Inventory, Dr. Luckett questioned this score, noting that her mother and grandmother answered for her and helped complete the inventory. (R. 218) Dr. Luckett noted that A.J.'s score on the depression index was extremely high and that her "clinical presentation would not be suggestive of this type of clinical depressive situation." (R. 218) Dr. Luckett explained:

> In interviewing [A.J.], she was very pleasant and positive. She sat up straight with excellent posture in a chair. She showed no signs of restlessness or hyperactivity. She showed no signs of agitation. She did not interrupt her mother or grandmother. She showed the ability to show pleasure and to laugh. She was spontaneous in her answers. She showed no behavioral peculiarities whatsoever. She showed no vegetative signs of depression. It is likely that she is depressed but one would suspect more within a mild range perhaps 18 to 25 on the children's depression inventory based on her presentation.

(R. 218) Dr. Luckett noted that A.J.'s grandmother "virtually endorsed every item on every diagnostic category including depression, OCD, somatization disorder, Tourette's syndrome, etc." (R. 220) Dr. Luckett commented:

> It is possible that [A.J.'s] mother and grandmother are issuing a cry for help. It is also possible that they are exaggerating the symptomatology that is occurring within this child. This child was very polite, engaging and pleasant. Intelligence is estimated to be within the low average range of intellectual abilities. Coping and problem solving skills are currently challenged with the emergence of some anxiety and some depressive symptomatology. This would appear to be of a mild to light moderate degree, but not at

7

> the severity that is being endorsed across the questionnaires and
> within the clinical interview conversation. [A.J.] was appropriately
> oriented for her age and is able to converse in a socially pleasing
> and appropriate manner. Environmental factors may be playing a
> large role in the perpetuation of the psychological issues.

(R. 220)

Consistent with Dr. Luckett's evaluation, Julie Jennings, Ph.D., a psychologist, and Dr. Joseph Duckwall, a pediatrician, completed a Childhood Disability Evaluation Form on April 3, 2006, concluding that although A.J. had a severe impairment from depression, anxiety and ADHD, her impairments did not meet, medically equal or functionally equal a listing. These evaluators found less than marked limitations in domains (ii) (attending and completing tasks) and (v) (caring for yourself) and no limitation in the other four domains. (R. 224-25) Drs. Jennings and Duckwall explained that "[a]lthough severe limitations are alleged by mother and grandmother, these are not supported by the findings in file. Both school and CE do support some problems with ADHD and depression, however, not to the degree alleged. Allegations are not found to be fully credible." (R. 227)

Dr. Claytor's assessment also stands in marked contrast to A.J.'s school records, which indicates that she progressed through the first four grades with at least average marks. (R. 163)[4] A.J. passed her Standards of Learning tests, and is considered to be a "capable student" with "at least average ability and achievement." (R. 170) It was noted that attendance has been a

---

[4]While A.J.'s grandmother testified at the administrative hearing that A.J.'s grades were "Cs. Ds and Fs," her scholastic history does not reflect grades at such a low level. (R. 163) Through the fourth grade, A.J. earned As, Bs and Cs. (R.163) Further, the academic records note that A.J. was performing at her actual grade level and was not enrolled in special education classes. (R. 172, 157) While there is a record from the beginning of fifth grade that reflects one A, two Bs and three Fs, that record also noted that she "has been in school for only 10 days of the 14 she has been enrolled."

8

problem. (R. 172) In a Teacher Questionnaire completed for disability evaluation purposes, the fifth grade teacher noted problems in domains (iii) (interacting and relating with others) and (v) (caring for herself). As to domain (iii), A.J.'s teacher noted a problem with seeking attention appropriately and connecting with other children. (R. 175) Concerning domain (v), A.J.'s teacher noted that she does not seek help from appropriate resources to help her cope with issues. (R. 177) As to her health and physical well-being, the teacher noted the diagnosis of ADHD and depression, commenting that "[s]he occasionally has difficulty with focusing on work, and she rarely shows any emotion other than sadness." (R. 178)

An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 416.927(d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 416.927 (d)(2); Social Security Ruling 96-2p.

The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 416.927. A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating

9

physician's opinion certain weight or explain why he discounted a physician's opinion. <u>Mastro</u>, 270 F.3d at 178; 20 C.F.R. § 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The court finds that the ALJ considered and properly weighed Dr. Claytor's opinion that A.J. meets Listing 112.11 and has marked limitations in all domains of functioning. The ALJ, after thorough consideration, found that Dr. Claytor's opinion "is not supported by the medical evidence, and is inconsistent with his own and other records." (R. 20) Dr. Claytor's own notes indicating that A.J. was stable and doing well are inconsistent with his conclusion that A.J. met Listing 112.11. For Listing 112.11 to be met, there must be marked impairment in two of the four age-group criteria, consisting of cognitive/communicative functioning, social functioning, personal functioning and concentration, persistence or pace. The ALJ engaged in a detailed analysis of the medical records, finding that while A.J. does have some limitations in the areas of age appropriate social functioning and maintaining concentration, persistence or pace, the medical records do not support a marked limitation in these areas. The ALJ noted that Dr. Claytor's functional assessment was not supported by his treatment notes, any other medical evidence and does not refer to any specific clinical finding to support his conclusion that marked limitations exist. Considering all of the medical and school evidence in this record, there is an apparent disconnect between these records, including Dr. Claytor's own notes indicating that A.J.

was stable and doing well, and the form completed on September 2006 by Dr. Claytor indicating that A.J. had marked limitations in all domains of functioning. This disconnect is most apparent from a comparison of the picture of stability and improvement reflected in Dr. Claytor's treatment notes from June, 2005 through September, 2006 and the extreme limitations reflected in his September 25, 2006 response to counsel's inquiry. Perhaps most striking is the contrast between that bleak assessment of A.J.'s functioning and the contrasting hopeful image reflected in the medical note of the visit just three weeks earlier. Given the disconnect between Dr. Claytor's rather consistent treatment notes and his conflicting September 26, 2006 assessment, the ALJ was well justified in not according that opinion controlling weight. Review of the consultative examination report by Dr. Luckett and the evaluations by Drs. Jennings and Duckwall combine to support the ALJ's decision. The ALJ satisfied his duty to examine all the medical evidence of record and his decision not to follow the conclusory opinion of Dr. Claytor is supported by substantial evidence. The ALJ's decision to accord little weight to the opinion of Dr. Claytor is not error, because that opinion is "inconsistent with the other substantial evidence in the record," specifically Dr. Claytor's own treatment notes, the scholastic records and the assessments of Drs. Luckett, Jennings and Duckwall. Mastro, 270 F.3d at 178; 20 C.F.R. § 416.927 (d)(2); Social Security Ruling 96-2p.

### IV.

Burwell next argues that the ALJ erred in not finding that A.J. functionally equaled a listing because of marked limitations in domains (iii) (interacting and relating well to others) and (vi) (general health and physical well-being). There is no doubt that the record supports some level of limitation in domain (iii). Burwell and the ALJ disagree as to whether the limitation in

11

that domain rises to the level of a marked limitation. Even assuming that Burwell is correct as to domain (iii), however, the evidence does not support any limitation, much less a marked limitation in domain (vi), concerning A.J.'s overall health and physical well-being. There are no significant health problems reflected in Dr. Dixon's pediatric records, nor do the school or other medical records suggest any substantial physical or health problem. As the ALJ noted, Burwell herself testified that her granddaughter had no physical problems. (R. 21, 311) Domain (vi) requires consideration of "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies" on a claimant's functioning beyond the gross and fine motor skills considered in domain (v). 20 C.F.R. § 416.926a(*l*) This domain plainly concerns "physical effects," and there is no suggestion in the record that the emotional and behavioral problems besetting A.J. caused her any marked physical problems. To be sure, the medical notes do mention occasional problems with appetite, these are offset by notations of weight gain. The records from A.J's treating pediatrician do not suggest any functionally significant physical problem, and there is simply no support in the record for a marked impairment in this domain.

     The ALJ's determination that there were insufficient limitations in the domain of health and physical well-being is amply supported. Although A.J. faces some emotional and behavioral issues in her young life, it is clear there is substantial evidence to support the ALJ's findings and conclusion that A.J. did not meet the required criteria for childhood disability. Again, it is not the province of the court to make disability determinations or to re-weigh the evidence in this case; rather, the court's role is to determine whether the Commissioner's decision is supported by substantial evidence. Considering that the Supreme Court has defined substantial evidence to be

more than a mere scintilla and somewhat less than a preponderance, <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988), <u>Richardson v. Perales</u>, 402 U.S. at 401, it is clear that the evidence in the record in this case meets the substantial evidence standard.

## V.

Accordingly, the court affirms the final decision of the Commissioner and grants the defendant's motion for summary judgment.

In affirming the final judgment of the Commissioner, the court does not suggest that A.J. is totally free of any impairment. Rather, the court finds that the objective medical record and evidence from A.J.'s doctors, teachers and counselors simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating the claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of the Court is hereby directed to send a certified copy of the Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 14th day of May, 2008.

_____
Michael F. Urbanski
United States Magistrate Judge

13

Case 7:07-cv-00300-mfu   Document 20   Filed 05/14/08   Page 13 of 13   Pageid#: 84